**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HYUNG SEOK KOH, *et al.* | ) | |
| | ) | No. 11 C 2605 |
| Plaintiffs, | ) | |
| | ) | Judge Dow |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| DET. M GRAF #145, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS

NOW COME the Defendants, OFFICER SUNG PHIL KIM, ("Officer Kim") and the VILLAGE OF WHEELING, ("Wheeling") by and through their attorneys, KLEIN, THORPE and JENKINS, Ltd. and hereby move this Honorable Court to dismiss COUNT I (Fourth Amendment - False Arrest through "failure to intervene"), COUNT II (Sixth Amendment), COUNT III (Fifth Amendment – Right Against Self-Incrimination), COUNT IV (Failure to Intervene), COUNT VI (Conspiracy), COUNT VII (Malicious Prosecution), and COUNT VIII (Intentional Infliction of Emotional Distress) of the Plaintiffs' Complaint as it applies to Officer Kim and the Village pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In support of this motion, the Defendants state:

*Introduction and Alleged Facts*

The Plaintiffs filed suit praying for relief against all Defendants related to their arrest and detention by the defendant officers of the Northbrook Police Department on April 18, 2009. (First Amended Complaint, ¶¶ 14-41.) Officer Kim is a member of the Wheeling Police Department, and became involved in this matter only as a Korean/English interpreter, not as an investigating officer, to assist the Northbrook Police Department's investigation. (*Id.*, 27-28.)

The Plaintiffs have pled eleven counts against *all* Defendants: Fourth Amendment Violation (Count I), Sixth Amendment Violation (Count II), Fifth and Fourteenth Amendment (Count III), Failure

to Intervene (Count IV), Policy and Practice: Northbrook (Count V), Conspiracy (Count VI), Malicious Prosecution (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Loss of Consortium (Count IX), Respondeat Superior (Count X), and Indemnification (Count XI). The factual issues plead by the Plaintiffs were tried before the Circuit Court of Cook County in the criminal matter, and the portions relevant to the potential liability of Officer Kim have been hereto attached as a public record which the Court may consider in this 12(b)(6) motion, as *Exhibit A*.

Officer Kim is a Korean-American, who grew up in a Korean speaking household. (*Exhibit A*, at 2592.) Additionally, from 1994 to 2003, Officer Kim lived in Korea Town in Los Angeles where he worked in a Korean restaurant as a waiter. (*Id.*at 2593). Officer Kim has been a police officer with the Wheeling Police Department for nearly six years. (*Id.* at 2557). The Northbrook Police Department has called Officer Kim to serve as a Korean language interpreter on three (3) occasions. (*Id.* at 2557). The first time that Officer Kim was asked to serve as an interpreter for the Northbrook Police Department was on April 16, 2009, the incident in question here. (*Id.* at 2557-2558).

At 5:00 am on April 16, 2009, Officer Kim was informed by his sergeant at the Wheeling Police Department that the Northbrook Police needed a Korean speaking officer. (*Id.* at 2558). All Officer Kim knew of the circumstances was that it was a death investigation. (*Id.*). No one told Officer Kim that it was a murder investigation. (*Id.*). All he had been told was Plaintiffs were victims and that their child had died of a possible suicide. (*Id.* at 3107).

Officer Kim arrived at the Northbrook Police Station at 6:00 am, at which time the Plaintiffs were already in the station. (*Id.* at 2558). As Plaintiffs indicate in their First Amended Complaint, Officer Kim was not involved in the Plaintiffs' arrest. (Complaint at ¶ 48). Officer Kim was told his translation services were needed for the victim's parents. (Transcript at 2595). At the Police Station, Officer Kim discussed his role as an interpreter with the other detectives, and the detectives informed Officer Kim that he was to provide interpretation or translations only if Plaintiff had trouble understanding anything. (*Id.* at 2562). Officer Kim was told that his role would be strictly as a translator or interpreter. (*Id.* at 3107).

2

Shortly before 7:00 a.m., Officer Kim went into the conference room where the Plaintiffs were sitting. (*Id.* at 2595). Officer Kim was introduced to the Plaintiff as a police officer. (*Id.* at 2562-2563). As far as Officer Kim knew, he was the only Korean speaking officer at the Northbrook Police Station that morning. (*Id.* at 2609).

The first interview session that Officer Kim was present for was from 7:30 am until about 8:25 am, or less than one hour. (*Id.* at 2572). Officer Kim was present with Investigator Ustich and Investigator Graf, the only three officers in the room. (*Id.* at 3011). Officer Kim's translation services were not needed much during the first interview because Plaintiff mostly spoke in English to the detectives conducting the interview. (*Id.* at 2599). Officer Kim was not wearing a police uniform during the interviews; rather, Officer Kim was dressed in street clothes and was wearing a blue hooded sweatshirt and a black baseball cap. *Exhibit B* at 02:45.

During the first interview, Officer Kim translated Plaintiff's Miranda rights into Korean for Plaintiff Mr. Koh. (*Exh. A* at 2600). Plaintiff Mr. Koh was first read his Miranda rights in English and signed his Miranda waiver just after Officer Kim began reading Plaintiff his rights in Korean. (*Id.* at 3018).

While Officer Kim was reading Plaintiff his Miranda rights, Officer Kim was directly translating the Miranda script. (*Id.* at 2613). At one point, Plaintiff told Officer Kim "oh, Mook Bic Gwun," which is the Korean word for the Korean Nation's set of rights to remain silent. (*Id.*) Officer Kim admitted at the hearing that he did not use the word Mook Bic Gwun because he was unsure whether that set of rights in Korean was the same as the rights provided in the Miranda rights. (*Id.* at 2614). Officer Kim did not translate the Plaintiff's right to an attorney because when this right was read in English, Plaintiff responded affirmatively that he did not need an attorney. (*Id.* at 2616, 3149). Officer Kim did at one point later inform Mr. Koh in Korean that he had a right to an attorney. (*Id.* at 3150).

After Officer Kim translated the Miranda rights provided him by the Northbrook Police Officers, Officer Graf informed Plaintiff Mr. Koh that Officer Kim would be in the room to provide translation assistance. (*Id.* at 3122-3123). During this first hour portion of the interview, Officer Kim provided his

translation services for approximately two (2) sentences only.  (*Id.* at 3123).  These two (2) sentences related to the Plaintiff Mr. Koh's statements about a conflict between him and his deceased son.  (*Id.*).

After this first interview, Officer Kim was alone with Plaintiff in the conference room, during which time Officer Kim discussed his Korean background with Plaintiffs.  (Transcript at 2561).  Out of a fear of insulting the Plaintiffs for not using the proper honorifics, Officer Kim apologized to Plaintiff Mr. Koh and indicated that Officer Kim was more comfortable with the casual sense of Korean.  (*Id.* at 2594, 2602). Officer Kim never indicated to the Plaintiffs that he did not understand Korean.  (*Id.* at 2602). Plaintiff Hyung Seok Koh told Officer Kim that his Korean was very good, and he even asked Officer Kim to translate for his wife.  (*Id.* at 3123).   During this break, Plaintiff Mr. Koh asked if he could speak with his pastor and Officer Kim indicated that he would find out whether he could.  (*Id.* at 3181). When Plaintiff Mr. Koh requested to speak with his daughter, Officer Kim indicated that it was not in his capacity to make that decision because Officer Kim was just there as an interpreter.  (*Id.* at 3183).

A second interview was conducted by the Northbrook Detectives beginning around 11:30 am, and Officer Kim was again present to serve as an interpreter.  (*Id.* at 2610, 3129). The second interview initially lasted approximately 70 minutes at which point the tape recording stopped abruptly because the tape needed to be changed .  (*Exh. A.* at 3130.)  After the tape was changed, the interview resumed for about 20 more minutes.  (*Id.* at 3130.)  Thus, the second interview lasted approximately an hour and a half in total. Officer Kim's interpretation services were needed more during this second interview than during the first interview.  (*Id.* at 2611-2612).  Officer Kim did not translate the conversation word for word, he translated when it looked like Plaintiff Mr. Koh needed help or when Plaintiff looked to Officer Kim or asked for a translation.  (*Id.* at 3157-3158).  A few times, Officer Kim asked additional follow-up questions for clarification purposes only.  (*Id.* at 3160).

This interview ended when Plaintiff Mr. Koh's lawyer arrived at the Police Station.  (*Id.* at 2612). Prior to the attorney entering the conference room, Officer Kim was unaware that an attorney was present.  (*Id.* at 3132). Officer Kim was also not aware that any of Plaintiff Mr. Koh's friends or family

were at the police station. (*Id.*). During Officer Kim's interactions with Plaintiff Mr. Koh, Plaintiff never asked to leave, to go to the hospital, or to have any medication. (*Id.*).

After the second interview, Officer Kim had no further interactions with the Plaintiffs. (*Id.* at 2612).

Regarding their arrest, the Plaintiffs allege only the following actions attempting to implicate Officer Kim, mainly suggesting that Officer Kim had authority to act as an officer while at the Northbrook Police Department and that his acts of interpretation of the interrogation made the interrogation longer than if no interpretation had been done for the Plaintiffs:

> While Defendant Kim was not present at the time of Plaintiffs' initial arrest, he too is liable under this count [false arrest], because he participated in improperly extending the Plaintiff Hyng Seok Koh's unlawful detention for purposes of the interrogation. At a minimum, he could have taken steps to terminate Hyung Seok Koh's unlawful detention, but instead was a voluntary participant in tortious violation of Plaintiff's rights." (¶ 48.)

Thus, none of the allegations that are related to the physical arrest of the Plaintiffs implicate Officer Kim in any way.

After presenting extensive evidence, expert testimony, presentation of relevant caselaw, and argument before the Circuit Court of Cook County, the Circuit Court of Cook County agreed with the prosecution that there existed probable cause for the arrest of Plaintiff Mr. Koh (*Exh. A* at 2839), and that the interrogation statements of Plaintiff Mr. Koh were constitutional and could properly be heard by the Jury. (*Id.* at 3797.)

Officer Kim and Wheeling hereby move this Court to dismiss all claims related to the false arrest and coercion of either Plaintiff as well as the entirety of Plaintiff Eunsook Koh's claims against them.

### Argument

As an initial matter, this Court should consider the transcripts attached as *Exhibit A* and the video of the interrogations of Mr. Koh as *Exhibit B*, as public records, without converting this to a summary judgment motion:

Both Plaintiff and the Defendants present pleadings and a transcript from Plaintiff's state court criminal case. Although these documents are not part of Plaintiff's complaint, this Court need not convert the Motion to Dismiss into one for summary judgement. See Fed.R.Civ.P. 12(d) (generally, when matters not presented with the complaint are included with a motion to dismiss, the motion should be converted into one for summary judgment). Courts may take judicial notice of public records, such as complaints, pleadings, and transcripts from another proceeding when deciding a motion to dismiss. [. .] Therefore, this Court thus may consider the pleadings and transcript from Plaintiff's state criminal case when addressing the Motion to Dismiss.

*Cameron v. Patterson*, 2012 WL 1204638, 1 (N.D. Ill. 2012) ( citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994); *Ray v. City of Chicago*, 629 F.3d 660, 665 (7th Cir. 2011)).

F.R.C.P. 12(b)(6) allows a defendant to move to dismiss any complaint that that fails to state a claim upon which relief may be granted. *See, e.g., CBS Outdoor, Inc. v. Village Of Itasca, Ill.*, 2009 WL 3187250, 1 (N.D. Ill. 2009). The factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). This Court should reject legal conclusions in the Complaint unsupported by factual allegations because such conclusions are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The Court may draw on its "judicial experience and common sense" to determine whether the factual allegations "plausibly give rise to an entitlement of relief." *Id.* To survive this Motion to Dismiss, the Court must find that the complaint presents a story plausible enough to show that Plaintiffs have a reasonable chance of proving their claims. *Id.* at 1946-50. Any "bare legal conclusions" will not support a legally cognizable claim. *Bissessur v. Indiana University Bd. of Trustees*, 2009 WL 2902076, 2 (7th Cir. 2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). Moreover, a "complaint must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 557) (citing *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008)).

This Court should dismiss all claims against Officer Kim (and therefore the two indemnification counts against Defendant Wheeling) because: (1) the Plaintiffs have not pled sufficient evidence that Officer Kim is liable for a failure to intervene in either the arrests or interrogations of Plaintiffs; (2)

Officer Kim's function as a mere interpreter or translator does not allow him to be liable for the false arrest and interrogation; (3) even if Officer Kim were an "interrogator," the interrogation was not unconstitutional; (4) even if Plaintiffs have plead sufficiently against Officer Kim, they can provide no clear legal guidance that would have informed a reasonable interpreter that his actions were unconstitutional, so the claims against Officer Kim should be dismissed now on qualified immunity grounds; (5) the intentional infliction of emotional distress and the loss of consortium state law claims are time-barred; (6) the malicious prosecution claim fails as a matter of law against Officer Kim; and (7) the intentional infliction of emotional distress claim fails as a matter of law against Officer Kim.

## I. PLAINTIFFS HAVE FAILED TO PROPERLY PLEAD A FAILURE TO INTERVENE CAUSE OF ACTION AGAINST OFFICER KIM, EITHER AS TO FALSE ARREST (COUNT I) OR COERCIVE INTERROGATION (COUNT IV).

The only facts Plaintiffs allege regarding Officer Kim's failure to intervene are that he "participated in improperly extending" the detention of the Plaintiff Hyung Seok Koh, when he arguably should have known there were a constitutional violations occurring and he reasonably could have done something about them. (¶ 48.) Moreover, they provide conclusory statements that he was not acting as a mere interpreter, but as an "interrogating police officer during all or most of the interrogation process," (¶ 28) without providing any actual factual assertions as to what statements or questions were asked improperly – legal conclusions that are belied by the actual record of evidence shown in *Exhibits A* and *B*.

Plaintiffs' allegations attempt to eat their cake and have it, too: they allege that Defendant Investigator Graff decided to make up and pursue a theory of motive against the Plaintiff, but also somehow that Defendant Officer Kim, as the assisting interpreter from a different police department, should have known Defendant Officer Graf's machinations and was able to do something about them:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know [. . .] that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Duran v. Town of Cicero*, 2005 WL 2563023, 13 (N.D. Ill. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994)). *See also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1019 (7th Cir. 2006) (holding that superior officer who had no knowledge of the details of an arrest could be held liable for arrest on a failure to intervene theory).

The facts here show only that Officer Kim was called in from the Wheeling Police Department to act as an interpreter for the Northbrook Police Department, for what Officer Kim thought to be a death, not a murder, investigation: there are no contrary facts present in the amended complaint or the trial record. The facts also show only that Officer Kim interpreted the Miranda warnings, and only two statements or questions in the entire first hour of interrogation, and only a handful more during the second hour-long session. The facts also show that Officer Kim only asked a few follow-up clarification questions that were not substantive in nature, but meant to elucidate either the question or answer. (*See Exhibit B.*)

The Plaintiffs simply have alleged no facts that would show Officer Kim had any reason to know that they were arrested at all, much less without probable cause. There are no facts alleged to suggest that Officer Kim had any knowledge of *any facts at all* in the investigation, or the circumstances surrounding the arrest of the Plaintiffs. Moreover, the Plaintiffs have not alleged any facts whatsoever that would show Officer Kim had any police authority whatsoever at the Northfield Police Station, or that he could order the investigators to stop the interrogation or free the Plaintiffs from custody.

Thus, this Court should dismiss any "failure to intervene" theory of liability against Officer Kim pursuant to 12(b)(6) because he did not know of the details of the arrest or investigation, nor did he have any authority to free the Plaintiffs or stop the interrogation, as an interpreter assisting from another police department.

## II.    OFFICER KIM, EVEN IF HE ADDED SUBSTANTIVE QUESTIONS TO THE INTERROGATION, CANNOT BE HELD CONSTITUTIONALLY LIABLE FOR LESS THAN PERFECT INTERPRETATIONS.

The entirety of the Plaintiffs' claims against Officer Kim hinge on his role as an interpreter, allegedly causing them constitutional harm. However, federal cases across the country show that imperfect interpretations of interrogations are allowed into evidence against criminal defendants, and that interpreters are not held civilly liable for their imperfect interpretations or translations.

For instance, the Seventh Circuit has upheld dismissal of claims against an interpreter who was alleged to have asked his own questions during an interrogation:

> With these principles in mind, we find that Officer Suchy's questions were not unreasonable given their limited breadth and scope. Officer Suchy questioned Martinez–Camargo only after Summit police officers requested his assistance in translation. When Officer Suchy became involved, he asked Martinez–Camargo routine biographical questions, such as his name, birth date and place of birth. Such interrogation—if it can even be called that—is not unreasonable, and it certainly does not rise to the level of an egregious violation of the Fourth Amendment. Accordingly, the BIA properly rejected this argument.

*Martinez Camargo v. I.N.S.*, 282 F.3d 487, 493 (7th Cir. 2002) (citation omitted). Similarly, lengthening an interrogation process due to interpretation, even by as much as half an hour, does not constitute a constitutional violation. *U.S. v. Rivera-Suarez*, 1999 WL 261704 at *5-6 (N.D. Ill. 1999). Moreover, other federal courts have found that allegations of improperly-interpreted *Miranda* warnings do not violate the constitution, where there is evidence that the criminal defendant expressed some understanding of the underlying rights at issue. *Duran v. Walker*, 2006 WL 3003949, 5 (N.D. Ga. 2006). *See also*, *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 20 (D.D.C. 2005) (dismissing false imprisonment and conversion claims against interpreter defendants). The Ninth Circuit has provided guidelines for whether self-incriminating statements provided through an interpreter can be admissible at trial pursuant to the Federal Rules of Evidence:

> Generally, we consider "the following four factors ...: (1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated."

*U.S. v. Romo-Chavez* , 681 F.3d 955, 959 -961 (9th Cir. 2012) (quoting *United States v. Garcia*, 16 F.3d 341, 342 (9th Cir. 1994)). Following this logic, the first factor would weigh against allowing the interpretation:

Northbrook provided the interpretive services of Officer Kim. The second factor would weigh in favor of Officer Kim: neither the Plaintiffs' allegations nor the facts in the trial record show any basis for showing a motive of Officer Kim against Plaintiffs. The third factor weighs in favor of Officer Kim, too: not only was the Korean translation provided only at times when Mr. Koh seemed to have trouble understanding the English, the level of Korean was not all that difficult. Officer Kim also admitted that he was not proficient in honorifics, but Mr. Koh still expressed his contentment with Officer Kim's translation, so much so that he asked for his services to assist with Mrs. Koh, too. The fourth factor is irrelevant here, since the Plaintiffs have alleged no actions taken after the interpretation that would question its validity. Indeed, at no point in either the criminal trial or before this Court do the Plaintiffs question the veracity or general accuracy of Officer Kim's interpretation of the interrogation. Thus, according to the standards listed above, Officer Kim would be found to have been acting "merely as a language conduit" for Mr. Koh. *Romo-Chavez*, 681 F.3d at 961. How any officer, whom a criminal court could find a mere "language conduit," could be held liable for civil constitutional violations due to his interpretation activity is beyond rational comprehension.

## III. EVEN IF OFFICER KIM COULD BE HELD TO BE AN "INTERROGATOR," AND NOT MERELY AN INTERPRETER, THE INTERROGATION OF THE PLAINTIFFS WAS NOT UNCONSTITUTIONALLY COERCIVE.

The Plaintiff Hyung Seok Koh claims that his interrogation was coercive and overcame his will in violation of the Fifth Amendment to the U.S. Constitution. *Amended Complaint*, ¶ 35. He alleges that the coercion came from three (3) actions by Defendant Kim: the length of the interrogation, lack of access to medication, and the presence of a weapon. *Id.* at ¶¶ 29, 30, 37, and 34. Factors relevant to a determination that police conduct is coercive in violation of the Fifth Amendment include "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *US v. Gillaum*, 372 F. 3d 848, 856-857 (7th Cir. 2004).

An interrogation of less than three (3) hours is not coercive based on its length, as a matter of law:

It is true that apparently he was in a straight-backed chair for three hours, there is no authority for the proposition that an interrogation of this length is inherently coercive.

*Berghuis v. Thompkins*, 130 S. Ct. 2250, 2263 (2010). The interrogation in this case was only roughly two and a half hours. Moreover, Officer Kim is not alleged to have set the length of the interrogation. Therefore, as a matter of law, the interrogation of Plaintiff Hyung Seok Koh was not coercive because of its length.

Plaintiff Hyung Seok Koh also claims that the interrogation was coercive because he is diabetic "had no access to any of his medications, and did not eat or drink properly." *Amended Complaint*, ¶¶ 29 and 30. He did not allege that he requested medication, food, or drink, at any time during the two and a half hours he was being interrogated. He did not allege that Officer Kim denied him medicine, food, or drink. A person under interrogation who does not request medication and/or does not inform others of his problems was not subject to a coercive interrogation on the basis that he was denied medication, food, or drink. *Gillaum*, 372 F.3d at 857. Therefore, the interrogation of Plaintiff Hyung Seok Koh was not coercive because he is diabetic or failed to eat or drink properly.

Plaintiff Hyun Seok Koh finally claims that the interrogation was coercive because Officer Kim was present in the interrogation room with a weapon. *Amended Complaint*, ¶ 34. He does not allege that the weapon was drawn, pointed at him, or even referred to by the Defendants conducting the interrogation – indeed, reviewing the video of the interrogation shows that the weapon was not referred to or used in any way. (*Exh. B.*) The mere presence of a weapon, without some show of force or authority in connection therewith, does not turn an interaction with the police into an unconstitutional arrest or interrogation. *See e.g. US v. Wyatt*, 179 F. 3d 532, 536 (7th Cir. 1999). Therefore, the interrogation of Plaintiff Hyung Seok Koh was not coercive merely because there was a weapon in the same room as him, and he alleges no facts on which the Court could find that the presence of the weapon resulted in coercion. Thus, as a matter of law, none of the Plaintiffs' allegations regarding coercive interrogations can succeed, and this Court should dismiss all claims related to coercive interrogation claims.

## IV. OFFICER KIM IS ENTITLED TO QUALIFIED IMMUNITY FOR HIS ACTIONS AS AN INTERPRETER.

As an initial matter, this Court should strive to decide issues of qualified immunity as early in the litigation as possible, because it is immunity from suit, not just from liability. *Pearson v. Callahan*, 555 U.S. 223 (2009); *see also*, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "The qualified immunity analysis comprises a two-part inquiry: (i) 'whether the facts alleged show that the state actor violated a constitutional right,' and (ii) 'whether the right was clearly established.'" *Hicks v. Irvin*, 2012 WL 4092621, 6 -7 (N.D. Ill. 2012) (quoting *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009).

In order to defeat qualified immunity and show such a clearly established right, a plaintiff should be able at least to point to a "closely analogous case establishing in a sufficiently particularized sense the right at issue." *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996). Moreover, this "clearly established" right should not come from a single decision, but should be "well-established." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

Clearly, the Plaintiffs generally have a clear constitutional right not to be arrested without probable cause or subjected to unconstitutionally coercive interrogation. However,

> [t]he relevant, dispositive inquiry in determining whether a right is clearly established [for purposes of qualified immunity] is whether it *would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted*." [. . .] *As long as "officers of reasonable competence could disagree on [the] issue, immunity should be recognized."* [. . .] Stated differently, the "clearly established" inquiry asks whether "in the light of pre-existing law the unlawfulness ... [of the conduct was] apparent." [. . .] The plaintiff bears the burden of demonstrating the violation of a clearly established right.

*Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (emphases added) (citations omitted). The "conduct" at issue here for Officer Kim is the interpretation service that he provided to the Plaintiffs, at the request of the Northbrook Police. Factual disputes or semantic arguments over characterization of the interrogation are unnecessary here: we have the video-taped entire interrogation at issue that concerns the entirety of Defendant Officer Kim's alleged misconduct. *Exh. B*. This Court has only to view this video tape and review the caselaw to determine whether Officer Kim's conduct clearly violated any constitutional rights of Mr. Kim.

Moreover, Officer Kim's conduct is covered in great detail in testimony at the criminal trial level, both fact and expert, as depicted in the transcripts in *Exhibit A*. It does not matter whether Plaintiffs have categorized Officer Kim's conduct during the interview/interrogation as "unduly coercive and confrontational." (¶ 6.) What matters for this inquiry is whether Officer Kim's actions, as depicted in that video and as he testified at trial, would clearly have been a constitutional violation that a reasonable officer should have known to be unconstitutional. Plaintiffs will be unable to point to even one case where an officer interpreter, even asking his own questions, up to half an hour's worth, (*U.S. v. Rivera-Suarez*, 1999 WL 261704 at *5-6 (N.D. Ill. 1999)), would be considered unconstitutional or excessive. The Plaintiffs can simply provide no clear legal guidance that Officer Kim's actions during the interrogation were unconstitutional whatsoever to contradict the interpreter-related caselaw cited above. Nor could Mr. Koh even convince the criminal court judge (arguably much more of an expert at such constitutional issues than a "officer of reasonable competence" should be held to be) that his arrest or interrogation were unconstitutional, even with the aid of a team of Jenner and Block lawyers – a factor that weighs in favor of granting qualified immunity here. Thus, this Court should dismiss all claims against Officer Kim because he is entitled to qualified immunity regarding his actions as an interpreter for the Plaintiffs.

## V. THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AND THE LOSS OF CONSORTIUM CLAIM BY PLAINTIFF MR. KOH ARE TIME-BARRED.

Officer Kim herein incorporates the other Defendants' statute of limitations arguments, and asks that this Court dismiss the time-barred state-law claims pursuant to F.R.C.P. 12(b)(6).

## VI. THE PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST DEFENDANT KIM FOR MALICIOUS PROSECUTION.

To state a cause of action for malicious prosecution, a plaintiff must allege facts to establish: (1) the commencement or continuation of an original criminal or civil proceeding by the defendant; (2) the termination of the proceedings in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 654 (1st Dist. 2006). The failure to establish any of these elements precludes recovery for malicious prosecution. *Fabiano v. City of Palos Hills*,

336 Ill. App. 3d 635, 641 (1st Dist. 2002). The Plaintiffs allege, in count VII that the Defendants maliciously instituted and continued judicial proceedings against Plaintiff Hyung Seok Koh. *Amended Complaint*, ¶ 74. They also allege that the Defendants made statements to the "prosecutors [. . .] with knowledge that they were false." *Id.* at 75. However, the Plaintiffs do not allege that Defendant Kim, as opposed to the Northbrook Defendants, made any statements that are tied to the prosecution of Plaintiff Hyung Seok Koh. To the contrary, Defendant Kim is only alleged to have interpreted for Plaintiff Hyung Seok Koh. Therefore, the Plaintiffs fail to state a cause of action against Defendant Kim for malicious prosecution, and this Court should dismiss Count VII pursuant to Rule 12(b)(6).

## VII. THE PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST DEFENDANT KIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that: "(1) the conduct was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress; and (3) the conduct, in fact, caused severe emotional distress." *Reilly v. Wyeth*, 377 Ill. App. 3d 20 (1st Dist. 2007). Further, a complaint that alleges a claim for intentional infliction of emotional distress must be specific, and must contain details beyond what is normally considered permissible in pleading a tort action. *Id.* The Plaintiffs allege, in count VIII, that the Defendants' actions were taken in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiffs. *Amended Complaint*, ¶ 79. The Plaintiffs do not allege any actions by Defendant Kim, as opposed to the Northbrook Defendants, that falls within the category of "extreme and outrageous." To the contrary, Defendant Kim is alleged to have interpreted for Plaintiff Hyung Seok Koh. Such action, as pled, cannot be "extreme and outrageous." Therefore, the Plaintiffs fail to state a cause of action against Defendant Kim for intentional infliction of emotional distress, and this Court should dismiss them pursuant to Rule 12(b)(6).

WHEREFORE, the Defendants, Officer Kim and the Village of Wheeling, by and through their attorneys, KLEIN, THORPE and JENKINS, Ltd. and hereby moves this Honorable Court to dismiss COUNT I (Fourth Amendment - False Arrest through "failure to intervene"), COUNT II (Sixth Amendment), COUNT III (Fifth Amendment – Right Against Self-Incrimination), COUNT IV (Failure to Intervene), COUNT VI (Conspiracy), COUNT VII (Malicious Prosecution), and COUNT VIII (Intentional Infliction of Emotional Distress) of the Plaintiffs' Complaint as it applies to Officer Kim and the Village of Wheeling pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

DEFENDANTS

By: /s/  Jacob Karaca

James V. Ferolo
Jacob Karaca
Klein, Thorpe and Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400