## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HYUNG SEOK KOH, *et al.* | ) |
| | ) No. 11 CV 2605 |
| Plaintiffs, | ) |
| | ) Honorable Judge Chang |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| DET. M GRAF #145, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## WHEELING DEFENDANTS' LOCAL RULE 56.1(a)(3) STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, VILLAGE OF WHEELING, and Wheeling Police Officer SUNG PHIL KIM, (collectively the "Wheeling Defendants"), by and through their attorneys, KLEIN, THORPE AND JENKINS, LTD., and pursuant to Local Rule 56.1 hereby submit this statement of undisputed facts in support of their Motion for Summary Judgment:

**Officer Sung Phil Kim and the Village of Wheeling hereby adopt and incorporate the Statement of Undisputed Material Facts and the Exhibits referenced therein by the Village of Northbrook Defendants, and provide the following Statements and Exhibits as supplemental and on behalf of Officer Sung Phil Kim and the Village of Wheeling.**

### Parties

1. Plaintiffs Hyung Seok Koh and Eunsook Koh are, and at all relevant times were residents of the State of Illinois, County of Cook. (Dkt. No. 133 - 2d Amd. Cmplt., ¶ 4).

2. Detective Graf, Detective Ustich, Chief Wernick, Commander Eisen, Officer Johnson, Commander Dunham, Officer Meents, and Officer Celia, at all relevant times were acting police officers employed by the Defendant Village of Northbrook, a municipal corporation. (Dkt. No. 133, ¶ 5).

3. Officer Sung Phil Kim ("Officer Kim") was at all relevant times a police officer employed by the Defendant Village of Wheeling. (Dkt. No. 133, ¶ 7); (Wheeling Exhibit #105 - Affidavit of Sung Phil Kim, ¶ 2).

4. Plaintiffs Hyung Seok Koh ("Mr. Koh) and Eunsook Koh ("Mrs. Koh") emigrated from Korea to the United States in 1983, and they later had two children, a son named Paul and a daughter named Helen. (Dkt. No. 133, ¶9-10).

**Background of Wheeling Officer Sung Phil Kim**

1. Officer Sung Phil Kim is a 42 year old Korean American man born in Chicago in 1973 to Korean parents who immigrated to the United States in the early 1970s. He attended several elementary schools in the greater Chicago area, and a short stint at Lutheran School in San Jose, California, when the family lived there briefly. (Northbrook Exhibit # 39 - Deposition of Ofc. Kim, pp. 17-18).

2. Officer Kim's family returned to the Chicago area attended a Korean church school for approximately 10 years, in addition to speaking Korean in his household growing up. He has also traveled to Korea on three occasions. (Northbrook Exhibit # 39, pp. 19, 21-22).

3. Officer Kim regularly spoke Korean in his personal life, and estimates that in April of 2009, approximately 70%-80% of his social conversations with friends and family members were in Korean, a trend that continued after he moved back to Chicago. (Northbrook Exhibit # 39, p. 289).

4. Officer Kim traveled to Korea for the first time in 1998 as a tourist and returned several times: once in 2000 when he spent some time traveling through Asia and a third time more recently. (Northbrook Exhibit # 39, pp, 21-23).

5. Officer Kim is employed as a Police Officer for the Village of Wheeling and is not a member of NORTAF (Northbrook Exhibit # 39, p. 7).

**Officer Kim Called to the Northbrook Police Station on April 16, 2009**

6. The Village of Wheeling Police Department received a request from Dispatcher Bertrand of the Village of Northbrook prior to 5:00 a.m. on April 16, 2009, requesting assistance with Korean interpretation for a Village of Northbrook police investigation. (Northbrook Exhibit # 38 - Deposition of Tara Kelley Bertrand, pp. 44-47).

7. At sometime around 5:00 a.m. on April. 16, 2009, someone contacted Sergeant Paul Hardt from the Wheeling Police Department regarding the need for a Korean interpreter to assist at the Northbrook Station. (Wheeling Exhibit # 106 - Deposition of Sgt. Paul Hardt, p. 6-9.)

8. Either Sergeant Hardt or Sergeant Panagakis, (neither of whom are Defendants in this matter nor spoke to any defendant in this matter that day), then contacted Ofc. Kim around 4:30 or 5:00 a.m., via a telephone call, to send him to the Village of Northbrook Police Department to provide Korean interpretation assistance in a death investigation. (Wheeling Exhibit # 106, pp. 13-15).

9. Officer Kim had worked the 3:00 pm to 11:00 pm shift on the previous day as a patrol officer. When Officer Kim arrived at the Northbrook police station, he was dressed in casual street wear – jeans, a hooded sweatshirt with the Wheeling Police Department insignia, a baseball cap – but was carrying his badge and his sidearm. (Northbrook Exhibit # 39, pp. 83-86).

10. Officer Kim was not immediately introduced to Mr. and Mrs. Koh but observed that Mrs. Koh was sitting in a chair and Mr. Koh was sitting next to her, prostate with his head on his wife's lap. Both were covered in a blanket and talking in Korean. Their voices were low and Officer Kim could not hear the conversation. Officer Kim did not talk to Mr. and Mrs. Koh at this time. (Northbrook Exhibit # 39, pp. 89-90).

### **Officer Kim's Role on April 16, 2009 at the Northbrook Police Station**

11. Officer Kim arrived at the Northbrook Police Station around 6:00 a.m. on April 16, 2009. (Northbrook Exhibit # 39, p. 81).

12. Officer Kim had never been at the Northbrook Police Station prior to this day, and was not familiar with any of the NORTAF or Northbrook Police Officers present that day. (Id., p. 59). Northbrook Detectives Graf and Ustich had never met Ofc. Kim before this day. (Northbrook Exhibit # 36 - Deposition of Det. Graf, p. 71; Northbrook Exhibit # 40 - Deposition of Det. Ustich, pp. 64, 109).

13. Officer Kim was not involved in the arrest of Mr. Koh. (Dkt. No. 133, ¶ 49).

14. At the beginning of Mr. Koh's interview on April 16, 2009, Officer Kim was not aware that Mr. Koh was a suspect in his son's death, nor was he aware that Mr. Koh had been taken into custody. (Northbrook Exhibit # 39, p. 284).

15. Officer Kim believed that his role during the interview was to assist Mr. Koh with whatever he needed to understand the questions he was asked, as explained to Mr. Koh by Detective Graf. (Id., pp. 43, 92). Officer Kim understood his role to be "to help a Korean couple who had just lost their son," in case of any problems in understanding the English language. (Northbrook Exhibit # 39, p. 87).

16. Officer Kim remained in the room with Mr. Koh and Mrs. Koh during the entire length of both of their interviews. Between sessions he moved from the conference room to a couch just outside the room, where he unsuccessfully attempted to take power naps. (Northbrook Exhibit #39, p. 154); (Wheeling Exhibit # 105, ¶ 3).

17. Officer Kim was involved in no meetings with any member of the CCSAO regarding the status of the investigation of Paul Koh, prior to the CCSAO approving felony charges

against Mr. Koh. (Northbrook Exhibit # 68 - Deposition of Robert Heilingoetter, pp. 66-67).

18. Officer Kim was involved in no meetings with any NORTAF or Northbrook Police Officer regarding the status of the investigation of Paul Koh, prior to the CCSAO approving felony charges against Mr. Koh. There are no witnesses that can place Officer Kim ever meeting with any of the NORTAF or Northbrook Investigators during the investigation of the death of Paul Koh, nor did Officer Kim have any reason to do so, since he was not part of NORTAF or part of the investigative team. (Northbrook Exhibit # 77 - Deposition of Michele Gemski, pp. 39-40).

19. Commander Scott Dunham stated that he was not aware that Officer Kim was involved in any decision-making or investigation regarding the Death of Paul Koh beyond providing interpretation on April 16, 2009, and did not speak to Officer Kim at the Northbrook Police Station the day of the investigation. (Northbrook Exhibit # 24 - Deposition of Cmdr. Scott Dunham, pp. 98-100).

20. Officer Brian Meents said, "I believe [Officer Kim] had no involvement besides the translation of the interviews." (Northbrook Exhibit # 7 - Deposition of Ofc. Brian Meents, pp. 158-160).

21. Detective Mark Graf testified that Officer Kim was never present in any NORTAF briefing regarding the death investigation of Paul Koh (Northbrook Exhibit # 36 - p. 338), nor did he see Officer Kim speak with other officer from Northbrook or NORTAF about the investigation of Paul Koh's death (Northbrook Exhibit # 36, p. 344), and further testified that he never instructed or discussed with Officer Kim regarding what to do during the interview of Mr. Koh. (Northbrook Exhibit # 36, pp. 344-345).

22. Detective John Ustich also testified that Officer Kim's only participation in the death investigation was "to provide interpreting if necessary," and that he never communicated any of the facts of the underlying investigation to Officer Kim, nor assisted him in any way with drafting Officer Kim's report. (Northbrook Exhibit # 40 - Deposition of Det. John Ustich, pp. 200-202).

23. Chief Charles Wernick stated that beyond assisting with language problems, Officer Kim did not have any other duties in the investigation of Paul Koh's death, and that he did not see or speak to Officer Kim at the Northbrook police station the day of the death investigation at all. (Northbrook Exhibit # 25 - Deposition of Chief Wernick, p. 188).

24. Commander Roger Eisen has never met Officer Kim, even unto the date of his deposition in this civil matter, and did not see him or talk to him at the Northbrook Police Department on the day of the Paul Koh death investigation. (Northbrook Exhibit # 3 - Deposition of Cmdr. Roger Eisen, pp. 170-171).

25. Officer Nichole Ochab testified that she did not know Officer Kim prior to the date of the death investigation, does not recall seeing or talking to Officer Kim ever before April 16, 2009, or at the Northbrook police station that day at all, nor recalls seeing Officer Kim talking with any of the other investigating officers that day. (Northbrook Exhibit # 34 - Deposition of Ofc. Nicole Ochab, pp. 75-77).

26. Officer Keith Celia testified that, other than once years prior when he responded to a traffic call involving Officer Kim, he had never talked with Officer Kim, either prior to the death investigation or during the death investigation. He also testified that he never spoke to Officer Kim on April 16, 2009, nor did he see Officer Kim talk with any officer investigating the death of Paul Koh. (Northbrook Exhibit # 4 - Deposition of Ofc. Keith Celia, pp. 117-119).

27. Officer Kim was in no way involved with the decision to prosecute Mr. Koh for any crime. (Northbrook Exhibit # 68, pp. 66-67).

28. The prosecuting State's Attorney felt that Officer Kim's Korean speaking abilities were not a material issue in Mr. Koh's criminal trial. (Northbrook Exhibit # 77, p. 91).

29. At the conclusion of the interviews of Mr. and Mrs. Koh, Officer Kim completed a report regarding his services at the Northbrook police station on April 16, 2009. (Northbrook Exhibit # 39, pp. 32-33).

30. Since the April 16, 2009 interview of Mr. Koh, Officer Kim has been to the Northbrook Police Department to help with translating Korean, in two other cases, neither of which relates to the Kohs. (Northbrook Exhibit # 39, pp. 118, 216).

### The Interview of Mr. Koh on April 16, 2009

31. Mr. Koh was interviewed by the Northbrook Police Department in two segments totaling two and a half hours, the entirety of which was videotaped. (Dkt. No. 155 - Defendant's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, pp. 5-6, 8).

32. Throughout Mr. Koh's interview on April 16, 2009, Plaintiff Mr. Koh never mentioned any need for medication or other provisions in the presence of Officer Kim. (Northbrook Exhibit # 39, p. 131).

33. Throughout Mr. Koh's interview on April 16, 2009 Officer Kim had no knowledge of any forensic evidence, the scene of death, or of any other witness statements in the investigation; the only knowledge he had of the investigation came during the videotaped interviews with Mr. and Mrs. Koh. (Northbrook Exhibit # 39, p. 130).

34. NORTAF was in charge of the investigation of Paul Koh's death, and Officer Kim provided nothing to that investigation other than interpretation and translation

assistance, nor was he privy to any other information other than what he translated/interpreted the morning of April 16, 2009, during the videotaped interviews. (Northbrook Exhibit # 3, pp. 170-171); (Northbrook Exhibit # 4, pp. 117-119); (Northbrook Exhibit # 7, pp. 158-160); (Northbrook Exhibit # 24, pp. 98-100); (Northbrook Exhibit # 25, p. 188); (Northbrook Exhibit # 34, pp. 75-77); (Northbrook Exhibit # 36, pp. 344-345); (Northbrook Exhibit # 40, pp. 200-202); (Northbrook Exhibit # 77, pp. 39-40).

35. The CCSAO made the decision to prosecute Mr. Koh for the murder of his son, and no Defendant in this matter provoked or pressured the CCSAO to bring those charges. (Northbrook Exhibit # 77, pp. 103-104; Northbrook Exhibit # 68, pp. 65-66).

36. Officer Kim translated each and every one of Mr. Koh's Miranda rights as read by Detective Graf into Korean. Officer Kim advised Mr. Koh that "if he doesn't want to say anything he doesn't have to" (Northbrook Exhibit # 39, Kim, p. 23); Mr. Koh responded by stating to Officer Kim "moobikguan" which means the Korean right to remain silent (Northbrook Exhibit # 39, Kim, p. 23). Officer Kim then told Mr. Koh that anything he says can and will be used against him in court of law. (Northbrook Exhibit # 39, Kim, p. 24). Officer Kim went on to explain to Mr. Koh that he has right to an attorney with him while you know we are questioning him. Northbrook Exhibit # 39, Kim, p. 24). Officer Kim further explained that if Mr. Koh cannot afford an attorney that one would be appointed to him. (Northbrook Exhibit # 39, Kim, p. 25). At this point, Mr. Koh spoke over him and stated "don't need an attorney." (Northbrook Exhibit # 39, Kim, p. 25).

37. During his deposition, Mr. Koh confirmed that he understood each and every of Detective Graf's Miranda warnings given to him in English as shown on the videotape,

regardless of the Korean translation by Officer Kim. For instance, Mr. Koh was shown a portion of the Miranda warnings on the videotape, and asked through the interpreter:

> Q: Mr. Koh, on the videotape, did Officer Graf ask you: Anything you say can and will be used against you in a court of law, okay?
> A. On that tape, I think he did.
> Q. Okay. Did he also ask you -- tell you: You have the right to talk to a lawyer and have him present with you during any questioning?
> A. Yes.

(Northbrook Exhibit # 58 - Deposition of Mr. Koh, 3/16/15, p. 22).

38. Mr. Koh told Detective Graf, after Detective Graf's questioning, that he "did it in self defense." (Northbrook Exhibit # 53 - Deposition of Mr. Koh, 3/17/15, p. 185).

39. Apart from the summary translations of the Miranda warnings, of the items translated during the interview, even the Plaintiffs' expert can point to only one arguably notable error, a supposedly confusing interpretation by Officer Kim of "not going out together is better." (Wheeling Exhibit # 107 - Deposition of James Seok Yoon, pp. 72-76).

40. Mr. Koh admitted in his deposition that the questions and answers in English and Korean spoken on the videotape were essentially the same as the Elaine O'Brien transcription relied upon by the CCSAO during the criminal matter. During his deposition, Mr. Koh was assisted by a Korean-language interpreter, and his own backup interpreter, and these statements were presented to him in Korean, as translated directly from the English language transcript prepared by Ms. Elaine O'Brien on behalf of the Cook County State's Attorney's Office. For example, Mr. Koh was asked the following questions, and gave the following answers:

> MR. KARACA: "…I'm asking, does the videotape accurately reflect what you were asked and what you said that day?"
> MR. KOH: "I think so."
> (Northbrook Exhibit # 58, p. 10)

  MR. KARACA: "Did Officer Graf ask you: 'You have the right to remain silent. Do you understand that?'"
MR. KOH: "Yes."
(Northbrook Exhibit # 58, p. 10)

  MR. KARACA: "Did you say to either the interpreter or to Investigator Graf that you did it in self defense?"
MR. KOH: "Yes."
[…]
MR. KARACA: "Did Officer Graf ask you the following: You tell me, did you do it, Hyungseok?"
MR. KOH: "Yes."
MR. KARACA: "And you answered: I think, I think?"
MR. KOH: "Yes."
MR. KARACA: "And Sergeant Graf further asked you: Did you do it?"
MR. KOH: "Yes."
MR. KARACA: "And to that, you answered: Yeah."
MR. KOH: "Yes."
(Northbrook Exhibit # 53, pp. 185-186)

41. At the conclusion of the interview, Officer Kim was confident that he provided accurate translation assistance for Mr. Koh, and he does not have any remorse for any of his actions on April 16, 2009. (Northbrook Exhibit # 39, pp. 118, 129).

42. The Circuit Court of Cook County has already ruled against Mr. Koh on both the issue of his arrest and on the issue of his videotaped statements, finding the April 16, 2009 arrest to be constitutional, both on an initial motion and on a motion to reconsider made after Mr. Koh switched criminal defense teams. (Dkt. No. 17, p. 2; Northbrook Exhibit # 77, pp. 133-135).

**Officer Kim's Never Before Mentioned Alleged Statements to Mr. Koh Between Interviews**

43. During a break in the interview, Officer Kim and Mr. Koh sat alone in the interview room for approximately five minutes. Officer Kim believed that his role was to ask if Mr. Koh needed anything. During this time, Mr. Koh volunteered the statement, "kachi jookja, ah deun ahn tae kachi jookja," which means, "I said to my son, let's die together."

10

Officer Kim was confused by this statement and felt that it lacked context and was bizarre. (Northbrook Exhibit # 39, pp. 49-51).

44. At the same time during the break between the two interviews, Mr. Koh, for the first time ever on the record in either the criminal trial or the civil matter, including in his original, amended, first amended or second amended complaints, testified at his deposition that:

> "I noticed that police were there and then they were gone. I see them -- I remember them moving around. I think it was the Korean policeman, and he told me with a very sort of imposing voice, imposing manner, that your wife told us that you did it. So why don't you also agree to that, confess to that. Why don't you just say to the police that you did it?"

(Northbrook Exhibit # 58, p. 87.)

45. At no time on April 16, 2009, or at any time thereafter, did Ofc. Kim tell Mr. Koh that his wife told police officers that he had killed their son. (Wheeling Exhibit # 105, ¶ 4).

46. At no time on or after April 16, 2009, did Mrs. Koh tell Officer Kim, or police officers while in Officer Kim's presence, that Mr. Koh killed their son, nor did Officer Kim ever hear any police officers mention any such thing. (Wheeling Exhibit # 105, ¶ 5).

47. Mr. Koh cannot remember precisely if it was "the Korean Officer," that said this statement, where or when the statement may have occurred. (Northbrook Exhibit # 58, pp. 87-95.)

48. Mr. Koh never mentioned this supposed interaction during his interview, nor did he ask for a different interpreter or try to clarify on video that an officer may have made this statement to him off record, nor mention that he had any problems with Officer Kim as an interpreter nor appear frightened nor disconcerted on the videotape by Officer Kim's presence after that supposed interaction. (Northbrook Exhibit # 58, pp. 88-89). At no point during Mr. Koh's criminal trial, his deposition or in written discovery was Officer

11

Kim ever asked about this alleged interaction, or the alleged statements he made to Mr. Koh. (Wheeling Exhibit # 105, ¶¶ 6-8). Officer Kim was informed of these alleged statements in March of 2015, nearly four years after the Plaintiff filed suit in this civil matter. (Wheeling Exhibit # 105, ¶ 9).

    Respectfully,

    OFFICER SUNG PHIL KIM and
    VILLAGE OF WHEELING,

       /s/ Jacob H. Karaca
       Jacob H. Karaca

James V. Ferolo
Jacob H. Karaca
Carmen P. Forte Jr.
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606