**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HYUNG SEOK KOH and | ) | |
| EUNSOOK KOH, | ) | |
| | ) | No. 11 C 2605 |
| Plaintiffs, | ) | |
| | ) | Judge Edmond E. Chang |
| v. | ) | |
| | ) | |
| Det. M. GRAF, et al. | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO CERTIFY DEFENDANTS' APPEALS AS FRIVOLOUS**

Defendants Mark Graf and John Ustich, by and through their attorneys The Sotos Law

Firm, P.C. , and Sung Phil Kim and the Village of Wheeling, by and through their attorneys

Klein, Thorpe and Jenkins, Ltd., (collectively, "Defendants"), in opposition to Plaintiffs' motion

to certify Defendants' appeals as frivolous[1], state:

**INTRODUCTION**

Defendants' interlocutory appeals on the basis of qualified immunity are well grounded

and Plaintiffs' contention to the contrary is itself frivolous. Appellate jurisdiction over the denial

of qualified immunity on Mr. Koh's Fifth Amendment coerced confession claim is solidified

through Defendants wholesale acceptance of the Court's findings of fact at summary judgment.

---

[1] In Plaintiffs' recent appellate docketing statement, they note "it is not clear that Mrs. Koh should be a party to this appeal." (Appellees' Docketing Statement at p. 2, n. 1, *Koh, et al. v. Graf, et al.*, Nos. 18-1809 & 18-1821 (7th Cir. 2018). However, Plaintiffs' Second Amended Complaint, Count II, alleges a violation of Fifth Amendment rights and suggests both "Plaintiffs suffered injuries" as "Defendants Officers' actions…were willful and wanton…and with malice and reckless indifference to Plaintiffs' rights." (Dkt. 133, pp. 12-13). As such, out of an abundance of caution, Defendants appeal was filed against Mrs. Koh. To the extent she abandons any Fifth Amendment claim, Defendants will take appropriate steps to dismiss Mrs. Koh from the appeal.

The gravamen of Defendants' appeals, as set forth in detail below, is that there are no closely analogous cases establishing beyond reasonable debate that any of Defendants' actions during the interrogation of Mr. Koh were clearly unconstitutional in April 2009. That contention applies to Defendants' conduct as depicted in the videotape, as well as to any conduct identified by the Court as having potentially occurred off camera. Indeed, Defendants do not challenge a single factual determination made by this Court; rather they dispute the Court's conclusion that any of that described conduct was clearly unconstitutional under binding precedent.

Defendants believe the cases relied upon by the Court in denying immunity are too generalized to sufficiently provide notice to Defendants that any interrogation tactics they utilized were unconstitutional. It was and remains Defendants' contention that qualified immunity must be assessed with reference to the legality of the challenged conduct strictly from a reasonable officers' perspective, rather than through consideration of any vulnerabilities of the Plaintiff which were not of a sufficient magnitude to have put Defendants on notice that no interrogation should proceed. When applied in that fashion, and as argued on Defendants' motions for summary judgment, Defendants believe that they are entitled to qualified immunity as a matter of law. Defendants understand the Seventh Circuit may well disagree and affirm, but the suggestion that Defendants' appeals do not raise legitimate and important questions concerning the scope of qualified immunity when an interrogation is videotaped and where the appellants/officials accept all of the Court's factual determinations as gospel, is not well-taken. As Defendants' qualified immunity appeals are justified, the usual stay of trial is appropriate until the appeal is resolved. Plaintiffs' motion to certify the appeals as "frivolous" under *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989) is baseless.

I.      **Plaintiffs' Motion to Certify Defendants' Appeals as Frivolous is Itself Frivolous.**

The Plaintiffs' motion implies, but cleverly never actually asserts, that the Defendants' conduct in filing the notice of appeal rises at the very least to unethical behavior, and at the worst conduct that abuses the legal process for strategic gain. The implications in Plaintiffs' motion are grave, and to bring such implications before the Court is a serious matter that should not be cynically bandied about due to differences in opinions about the state of the law. Such motions should be based only on clear evidence that the Defendants' conduct has been so egregious that the legal process itself was being knowingly flouted to gain some clear strategic advantage. Plaintiffs simply have no such evidence and their motion should be denied. [2]

A.      **The Court's Authority Under *Apostol* to Prevent Interlocutory Appeals Is Narrow and Extremely Limited.**

In *Apostol*, the Seventh Circuit recognized that certain defendants, faced with a denial of qualified immunity, may frivolously file interlocutory (*Forsyth*) appeals in order to purposely stall the litigation. 870 F.2d at 1338–39. To combat this behavior, the Seventh Circuit empowered district courts to certify a very limited class of appeals as frivolous and set the case for trial. *Id.* at 1339. Indeed, the *Apostol* court admonished "district courts to act with restraint in using their power to certify the frivolity of an appeal." *McMath v. City of Gary, Ind*., 976 F.2d 1026, 1030 (7th Cir. 1992). This is because qualified immunity is "an immunity from suit rather than a mere defense to liability ...[and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis deleted). As a result, "[t]he Seventh Circuit [specifically] cautions that a defendant's right to appeal a qualified immunity

---

[2]  This is the second recent occasion in which the same Plaintiffs' attorneys have resorted to baseless contentions of frivolity to advance their position. In *Coleman v. Peoria,* 1:15-cv-01100 (C.D. Ill.) (Darrow, J.), Plaintiffs' attorneys' threatened Defendants on December 18, 2017 with Rule 11 sanctions if they did not promptly withdraw a motion for summary judgment they claimed was frivolous. Three months later, the motion was granted in full and is currently the subject of an appeal. *Id*. at Dkt.  121.

defense under *Forsyth* 'would be eviscerated if district courts, cloaked with the authority of *Apostol,* could too easily certify even potentially meritorious appeals as frivolous.'" *Fairley v. Andrews*, 2006 WL 2547216, at *4 (N.D. Ill. Sept. 1, 2006) (St. Eve, J) (internal citations removed). As such, appeals must only be certified as frivolous when the "claim of [qualified] immunity is a sham." *Apostol* at 1339. Against that backdrop, Plaintiffs' contention that Defendants' appeals are "frivolous" "[b]ecause Defendants have no jurisdictional or legal basis" (Pls' Br. p. 2) falls woefully short and their motion to certify Defendants' appeals as frivolous must be denied.

**B.     The Seventh Circuit's Jurisdiction to Review Defendants' Qualified Immunity Appeals Is Secure.**

Initially, Plaintiffs' implicit concession that appellate jurisdiction is secure if the Defendants do not present factual challenges to this Court's findings of fact is sufficient, in itself, to defeat their quest for a certification of frivolity. *See* Plfs' Br. p. 8 (indicating that if "Defendants disclaim any intention of mounting factual challenges on appeal" the appellate court will retain jurisdiction). For purposes of appeal, Defendants are accepting this Court's findings of fact at summary judgment as well as any inferences the Court drew from those facts. In doing so, Defendants' argument, summarized below, is that none of those facts or inferences set forth conduct, which has clearly been deemed unconstitutional under binding law. As a result, Plaintiffs' argument that the "Seventh Circuit lacks jurisdiction to consider the factual dispute that defendants will raise on appeal" is misguided and based entirely on an incorrect presumption of the nature of Defendants' appeals. (Pl's Br. p. 5.) As stated, Defendants' appeals will be based

4

entirely on the adoption of this Court's findings of fact at summary judgment and as such, firmly establishes the Seventh Circuit's jurisdiction.[3]

Plaintiffs' reliance on *Johnson v. Jones,* 515 U.S. 304 (1995), which prohibits interlocutory review of "the record to determine whether the district court erred in finding that a genuine issue of material fact exists," is to no avail. *See also Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005) (interlocutory review does not extend to "mak[ing] conclusions about which facts the parties ultimately might be able to establish at trial.") Indeed, *Johnson* does not prohibit review of the abstract legal question of whether a given set of undisputed facts demonstrates a violation of clearly established law. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). In reviewing this purely legal question, the Seventh Circuit may take the facts as the district court assumed them when denying summary judgment, or in a light most favorable to the plaintiff. *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013).

For the same reason, Plaintiffs' heavy reliance on *Stinson v. Gauger*, 868 F.3d 516, 525 (7th Cir. 2015) (jurisdiction defeated when defendants disputed the district court's sufficiency of the evidence), *Jackson v. Curry*, No. 17-1898, 2018 WL 1865023 (7th Cir. Apr. 19, 2018) (appellate courts lacked jurisdiction to review lower court's decision not to watch video interrogation at pleadings stage), and *Hurt v. Wise*, 880 F.3d 831, 839 (7th Cir. 2018) (appellate court cannot revisit inferences the district court drew from the recorded interrogation) falls flat. Unlike in *Hurt* and *Stinson*, where Defendants disputed inferences drawn and the facts identified by the district court, and *Jackson*, where Defendants sought review of a district court's refusal to

---

[3] As an alternative argument on appeal, Defendants' intend to argue the Court's failure to consider the interrogation in the light depicted in the video recorded interrogation also deprived Defendants of fair consideration of their qualified immunity defense consistent with the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 381(2007).

review a videotape of an interrogation on the pleadings, Defendants quarrel here disputes only the legal test the Court applied to the facts found. This approach secures the Seventh Circuit's jurisdiction to review their appeals. Plaintiffs' half-hearted argument that Defendants' appeals are frivolous because they present a factual challenge foreclosing appellate jurisdiction is unfounded.

C. **Appellate Jurisdiction Exists to Consider Whether the Generalized Case Law Cited by this Court was Sufficient to Establish That Defendants' Specific Interrogation Tactics in 2009 Were Clearly Unconstitutional.**

It is Defendants' position that neither the Supreme Court nor the Seventh Circuit has conclusively established that any specific interrogation methods utilized by the Defendants, in isolation or in combination, were clearly unconstitutional in 2009. In that regard, Defendants believe this Court's denial of qualified immunity did not address the level of specificity required under *Gill v. City of Milwaukee*, to clearly establish that all but the plainly incompetent officer in Defendants' position would have known their interrogation methods were illegal. 850 F.3d 335, 340 (7th Cir. 2017).[4]

The *Gill* Court explained that "the Supreme Court has continually reiterated that clearly established law should not be defined at a high level of generality. While a case directly on point is not required, the clearly established law must be particularized to the facts of the case." 850 F.3d at 340 (internal quotations and citations omitted). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by

---

[4] In this regard, reliance on the Fifth Amendment totality of the circumstances test from the view point of a suspect in order to determine qualified immunity is misplaced. (*See* Pls' Br. p. 9.) Rather, the determination of qualified immunity should be based specifically upon whether Defendants, from the perspective of a reasonable police officer, should have understood that the specific interrogation methods they utilized were unconstitutional. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015) (when a case concerns qualified immunity, the Court considers only facts knowable to the defendant officers); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 472 (7th Cir. 1997) (in determining qualified immunity the court is concerned with whether a reasonable police officer could have believed the conduct was constitutional in light of clearly established law and the information he possessed at the time).

alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

In addition to the *Gill* Court's discussion of the level of specificity required in assessing qualified immunity, Defendants believe the facts of *Gill* are instructive, if not dispositive of Defendants' claim to immunity. In *Gill*, Plaintiff alleged the Milwaukee detectives: 1) knew Gill was cognitively impaired; 2) knew the impairment was apparent through his behavior and answers; 3) convinced him to waive his *Miranda* rights; 4) interrogated him over multiple days (five hours on one day and six hours on another day); 5) employed interrogation techniques of social isolation, confrontation, theme development and minimization; 6) falsely stated plaintiff had been identified as the shooter; 7) indicated he failed a polygraph test; and 8) coerced plaintiff to confess despite Plaintiff having professed his innocence more than 140 times. 850 F.3d at 339. Nonetheless, the *Gill* Court reasoned, taking into account Gill's mental capacity and the specific interrogation techniques used by the detectives, that "Gill has not cited and we [the Court] have not identified, any precedent from the Supreme Court or this Circuit that puts the unconstitutionality of the officers' conduct here 'beyond debate.'" 850 F.3d at 341 (citing *Mullenix v. Luna*, 136 S. Ct. 305 (2015)). Defendants believe the *Gill* Court's determination directly supports Defendants' qualified immunity defense, yet it was not addressed by this Court in its denial of qualified immunity. The *Gill* Court, facing strikingly similar interrogation tactics as found here - manipulation, lying about the evidence, extending the interrogation until confession, refusal to accept denials, minimization, social isolation, and confrontation, all with the knowledge of plaintiff's impairment - was *unable* to identify any clearly established law that put a reasonable police officer on notice that use of such specific interrogation tactics was unconstitutional. At a minimum, appellate jurisdiction exists so that the Seventh Circuit may

7

consider whether this Court's denial of qualified immunity was consistent with the holding in *Gill*.

In reaching a contrary conclusion on the facts of the instant case, this Court explained:

a reasonable officer would have known that verbally and physically intimidating a suspect, as well as manipulating him, lying to him, and coaching him on the details of the confession, all while knowing he was not fluent and was operating without food, medications, or sleep, violated the Fifth Amendment. And a reasonable officer assigned to interpret for that suspect would have recognized that manipulating his deficient understanding of English, mistranslating the Miranda warnings, and altogether refusing to provide translation assistance, likewise violate the Constitution. (Dkt. 383, pp. 44-45).

The Court further indicated that Defendant Graf threatened to extend Mr. Koh's interrogation until he gave the right answer, fed Mr. Koh every critical fact, refused to accept denials, and minimized Mr. Koh's moral guilt. *Id*. at p. 45. But police officers are allowed "considerable latitude in playing on the guilt and fears of the person interrogated in order to extract a confession that he will shortly regret having given." *Johnson v. Trigg,* 28 F.3d 639, 641 (7th Cir. 1994). Specifically, detectives are permitted to "pressure, and cajole, conceal material facts and actively mislead" and lie about the evidence they have against the suspect. *U.S. v. Rutledge,* 900 F.2d at 1131. *See also*, *U.S. v. Ceballos*, 302 F.3d 679, 695 (7th Cir. 2002) (explaining that "a lie that relates to the suspect's connection to the crime is the least likely ['police trickery'] to render a confession involuntary") (quoting *Holland*, 963 F.2d at 1051.) Ultimately, the tactics identified by the Court in this case are not qualitatively distinct from those utilized in *Gill,* a case which was not considered by this Court, though it was cited as additional authority in support of Defendants' motions for summary judgment. (Dkt. 343). Additionally, while this Court concluded that Officer Kim's mistranslations (whether knowing or merely innocent mistakes) "likewise violates the constitution" according to the point of view of a reasonable officer, the Court did not identify a single case from any jurisdiction that has held any

interpreter to any such standard, based on any set of facts that could be considered even vaguely instructive to guide an interpreting officer's behavior.

Particularly in light of *Gill*, Defendants will also challenge this Court's reliance on *Hurt v. Wise* for the proposition that Graf's single threat to interrogate Mr. Koh for "days and days and days" was clearly illegal (Dkt. 383, p. 46). Indeed, the actual threat of death and imprisonment to the family members of the teenage plaintiffs in *Hurt* was of a far more culpable character (*see Hurt*, 880 F.3d at 846) and was plainly prohibited by a wealth of prior case law, specifically relied upon in *Hurt* , which stood for the proposition that specific threats to a suspect's family members are unconstitutional." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (confession was involuntary because it came after police threatened to cut off aid that the suspect used to care for her child); *Rogers v. Richmond*, 365 U.S. 534, 543-45 (1961) (a confession was unconstitutionally obtained because it came after police threatened to arrest the suspect's wife); *Sornberger* [*v. Knoxville*, 434 F.3d 1006,1023 (2006)] (allegation that police threatened to call the Department of Children and Family Services and recommend removing the suspect's children if she maintained her innocence created a material dispute about whether a confession was voluntary)." *Hurt*, 880 F.3d at 846. But the *Hurt* Court did not suggest or cite any additional authority to suggest that *any* type of threat to a suspect is constitutionally impermissible. To the contrary, the conclusion that any threat to a suspect is impermissible is contradicted by *Kunik v. Racine County, Wisconsin.,* 106 F.3d 168 (7th Cir. 1997), where police officers were granted qualified immunity after threatening a pregnant woman to falsely confess. In *Kunik*, police officers falsely told plaintiff they had inculpatory evidence and exploited her pregnancy through suggestions that confessing was the only way she would have her baby outside prison. *Id.* at 170. With "no occasion either to approve or disapprove of these kinds of investigatory tactics," the

9

Seventh Circuit found defendants were entitled to qualified immunity because "there is nothing suggesting that a reasonable police officer would know that a confession obtained under those circumstances was so inherently unreliable that an arrest based upon it would violate the constitutio[n]..." *Id*. at 174-75.

But even if the 2018 ruling in *Hurt* could support the proposition that any threat is clearly prohibited, the ruling should not have impacted Defendants' entitlement to qualified immunity in this case because *Hurt* reviewed a 2012 interrogation, and Mr. Koh's interrogation occurred three years earlier, in 2009. In that regard, it is well established that cases decided *after* the events in question cannot be utilized to support a determination that a specific form of misconduct was clearly prohibited at an earlier time.[5] *See D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law" at the time of the alleged violation); *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) ("To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official

---

[5] Similarly, this Court's reliance on *United States v. Preston*, 751 F.3d 1008, 1027-28 (9th Cir. 2014) for the proposition that police officers are precluded from threatening a suspect by stating the interrogation will never end, was not clearly established in 2009, nor does it place officers on notice of its impermissibility. In analyzing the admissibility of the confession based on the totality of the circumstances, the *Preston* Court held police officers coerced a severely mentally handicapped teenager into confessing. The suspect had an I.Q. of 65, his doctors explained he had "a small brain, like a five year old," the officers made clearly prohibited false promises of leniency, convinced him that he could not leave until he told them something incriminating, the suspect was clearly confused and made statements the officers knew were wrong, and the officers improperly executed certain interrogation methods. This plainly is not similar to the circumstances at bar and fails to place the Defendants on clear notice that any type of threat is illegal in 2009. In any event, a single decision from a sister circuit is insufficient to clearly establish the law within this circuit. *See Abbott v. Sangamon Cty., Ill.,* 705 F.3d 706, 731 (7th Cir. 2013) (To determine whether a right is clearly established courts must first look to controlling precedent from both the Supreme Court and its circuit. If there is no such precedent, courts may examine all relevant case law to determine whether there was such a clear trend in the case law at the time that courts can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time).

would have understood that what he is doing violates that right...") (quoting *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). Further, the only cases Plaintiffs rely upon that predate Mr. Koh's 2009 interrogation, primarily *Sornberger*, established only that specific threats to the safety and/or freedom of family members are unconstitutional, which is a far cry from establishing in a particularized sense that a single threat to prolong an interrogation is clearly illegal. 434 F.3d at 1023.

       This Court also relied on the fact that Mr. Koh was operating without food, medication, or sleep for a time, but Defendants will argue that no specific case law supports the conclusion that Defendants were on notice that deprivations of that relatively minimal character, spanning the course of several hours, were clearly unconstitutional. Plaintiffs cite *Andersen v. Thieret,* 903 F. 2d 526, 530 (7th Cir. 1990), which itself relies on *Brooks v. Florida* 389 U.S. 413 (1967), for the proposition that the deprivation of "food, sleep, and water" combined with a "mentally coercive interrogation" can render a confession involuntary. (Pls' Br., p. 8.) But *Anderson* did not even deal with a suspect who was denied food, sleep, or water, and the horrifying circumstances of Brooks's interrogation were so far removed from the conduct at issue in this matter as to defy any use of that decision for comparative purposes. In *Brooks*, the plaintiff was confined naked to a tiny cell where he subsisted for two weeks on a daily fare of 12 ounces of thin soup and eight ounces of water and conspicuously absent from the opinion is any mention of sleep deprivation. 389 U.S. at 414. By contrast, Mr. Koh's entire interrogation lasted 2 ½ hours in two sessions over the course of a five hour span, during which he admittedly and specifically declined food, coffee, and water before the second interview, and he does not even contend that he was precluded from sleeping before or after his first interview. (Dkt. 383, at pp. 7 & 11). And there is no dispute that Mr. Koh was provided his medication within several hours of his request.

(*Id.* at p. 8, n. 8). Indeed, Plaintiffs' reliance on *Andersen* to support their claim is such a stretch that it demonstrates, as much as anything, the dearth of authority putting Defendants on notice that any of their alleged conduct was unconstitutional.

## II. Principles of Qualified Immunity Demand a Stay of Trial and Appellate Review.

Defendants share Plaintiffs' concern to avoid "substantial prejudice" by engaging in needless litigation. In fact, avoiding the burdens and costs of trial is precisely the rational underlying the doctrine of qualified immunity. As the Supreme Court plainly asserted in *Mitchell*, qualified immunity was created to spare public officials the substantial costs and distractions associated with trial. 472 U.S. 511, 526 (1985). That is why qualified immunity "is an immunity from suit rather than a mere defense to liability" and an order denying qualified immunity is immediately reviewable on appeal. *Id.* Plaintiffs point out that some of this case will survive for trial regardless of the Seventh Circuit's resolution of the appeal (Pls' Br., p. 13), but the character and scope of the trial will be dramatically different depending on whether the coerced confession claim is tried. And if the issue of qualified immunity is delayed until after trial, it is a real possibility that a second trial may be required, depending upon the nature of the appellate court's ruling. As a result, it is well-established that interlocutory appellate jurisdiction over the denial of a claim to qualified immunity is appropriate despite the fact that other claims remain pending in the trial court. *See Leaf*, 400 F.3 at 1078-79 ("A plaintiff often seeks relief for a single incident on multiple theories of liability. When this occurs, the defendant does not lose his right to appeal the denial of qualified immunity as to one theory of liability even when he will be required to go to trial on another theory"). As such, because Defendants have well-ground appeals, they would be substantially prejudiced if this case were to proceed to trial without appellate review of their entitlement to qualified immunity on the coerced confession claim.

Finally, Defendants have expeditiously advanced this case and Plaintiffs make no claim to the contrary. While it is certainly regrettable that this suit continues to gestate, the present length of this action is not outside the norm for complex cases of this magnitude and Defendants are appealing the Court's resolution of the qualified immunity defense in good faith and for the singular reason of protecting their important right to avoid trial on a central claim which they believe is defeated by governing law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify Defendants' appeals as frivolous should be denied.

Dated: May 4, 2018                          Respectfully submitted,

/s/ Jeffrey R. Kivetz                       /s/ Jacob Karaca
JEFFREY R. KIVETZ, Atty No. 6308250         JACOB KARACA
*One of the attorneys for the*              *One of the Attorneys for Defendants*
*Defendants Mark Graf and John Ustich*      *Village of Wheeling and Sung Phil Kim*

James G. Sotos                              Jacob H. Karaca
Jeffrey R. Kivetz                           James V. Ferolo
THE SOTOS LAW FIRM, P.C.                     Carmen P. Forte, Jr.
550 East Devon, Suite 150                   Jason A. Guisinger
Itasca, Illinois 60143                      KLEIN, THORPE & JENKINS, LTD.
Tel: (630) 735-3300                         20 North Wacker Drive, Suite 1660
jkivetz@jsotoslaw.com                       Tel: (312) 984-6400
                                            jhkaraca@ktjnet.com

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C.A. § 1746, I electronically filed a complete copy of the foregoing **Defendants' Joint Response In Opposition To Plaintiffs' Motion To Certify Defendants' Appeals As Frivolous** with the Clerk of the Court on May 4, 2018, using the CM/ECF system, which will send notification of such filing to the below service list.

| | |
|---|---|
| Arthur R. Loevy | ***Attorneys for Officer S. Kim #147 &*** |
| Jonathan I. Loevy | ***Village of Wheeling*** |
| Elizabeth Mazur | Jacob Henry Karaca |
| Steven E. Art | James Vincent Ferolo |
| Joel Feldman | Carmen P. Forte, Jr. |
| Loevy & Loevy | Jason A. Guisinger |
| 312 N. May Street, Suite 100 | Klein, Thorpe & Jenkins, Ltd. |
| Chicago, IL  60607 | 20 North Wacker Drive, Suite 1660 |
| (312) 243-5900 | Chicago, IL  60606 |
| Fax: (312)  243-5902 | (312)  984-6400 |
| jon@loevy.com | Fax: (312)  984-6444 |
| loevylaw@loevy.com | jhkaraca@ktjnet.com |
| elizabethm@loevy.com | jvferolo@ktjnet.com |
| steve@loevy.com | cpforte@ktjnet.com |
| joel@loevy.com | jaguisinger@ktjlaw.com |

***Additional Counsel for Defendants Northbrook Police Officers & Village of Northbrook***
Brandon K. Lemley
Paul A. Rettberg
Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, IL 60604
(312) 540-7000Fax: (312) 540-0578
blemley@querrey.com
prettberg@querrey.com


/s/ Jeffrey R. Kivetz
JEFFREY R. KIVETZ, Attorney No. 6308250
*One of the attorneys for the Northbrook Defendants*

14